CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
10/20/2025
LAURA A. AUSTIN, CLERK
BY: s/K. Lokey
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [SEALED],<br><br>Plaintiff,<br><br>– Against –<br><br>[SEALED],<br><br>Defendant. | No.: 3:25cv85<br><br>**FALSE CLAIMS ACT COMPLAINT**<br><br>and<br><br>**JURY DEMAND**<br><br>**[TO BE FILED UNDER SEAL]** |

**FILED UNDER SEAL UNDER**
**31 U.S.C. § 3730(b)(2)**
**DO NOT POST ON ECF**
**DO NOT PUT IN PRESS BOX**

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
10/20/2025
LAURA A. AUSTIN, CLERK
BY: s/K. Lokey
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DANIEL FOSTER,<br><br>Plaintiff,<br><br>v.<br><br>BARBOURSVILLE WINERY, INC., a Virginia Corporation,<br><br>Defendant | No 3:25cv85<br><br>**FALSE CLAIMS ACT COMPLAINT** and **JURY DEMAND**<br><br>**[FILED UNDER SEAL]** |

## FALSE CLAIMS ACT COMPLAINT

Daniel Foster ("Relator") brings this action as a *qui tam* relator on behalf of the United States against Barboursville Winery, Inc., pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729-33, to recover damages, penalties, attorney fees and costs, and other relief.

### Introduction

1. On February 20, 2021, Barboursville Winery, Inc., the United States subsidiary of the Italian wine group Casa Vinicola Zonin S.p.A (Zonin Group), received approval for a second-draw Paycheck Protection Program ("PPP") loan in the amount of $459,120.00. At the time of the loan, Barboursville Winery and its affiliates had over 500 employees, far exceeding the Small Business Administration's ("SBA") eligibility threshold of 300 employees for second-draw PPP borrowers and their affiliates. On its second draw PPP loan application, however,

Barboursville Winery fraudulently represented that it had just 35 employees. Contrary to the clear requirements of applicable law and the PPP loan application, Barboursville Winery's second draw PPP loan application failed to disclose the employees of the company's affiliates.

2. Had Barboursville Winery been candid about its affiliate employees on its second-draw PPP loan application, it would not have received the second-draw PPP loan, and United States taxpayers would have saved $475,911.00 in forgiven loan proceeds and lender processing fees.

3. Relator is an original source of the complaint allegations. Prior to the filing of this Complaint, Relator voluntarily made substantive disclosures to the government of facts and evidence underlying the allegations in this Complaint.

4. This action is filed *in camera* and under seal pursuant to the requirements of the False Claims Act, 31 U.S.C. § 3730(b)(2).

## Jurisdiction and Venue

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732, which confers jurisdiction over actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

6. This Court may exercise personal jurisdiction over Barboursville Winery, Inc., and venue is appropriate in this Court, under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Barboursville Winery, Inc. resides in this District and transacts business in this District.

## The Parties

7. Relator is a dual citizen of the United States and Germany. He currently has a primary residence in Berlin, Germany. Relator holds a certificate in forensic accounting and fraud examination and a specialization certificate in digital forensics. Relator also holds a Wine

& Spirit Education Trust (WSET) Level 3 certification, giving him specialized knowledge of the wine industry. Relator first became aware of the issue of PPP fraud when he discovered that an organization with which he was affiliated had obtained PPP funds improperly. Sensing a larger problem, Relator began to use his digital investigative skills to identify other instances of apparent PPP fraud.

8. Barboursville Winery, Inc. is a Virginia corporation with a principal business address of 17655 Winery Road Barboursville, VA 22923, and a mailing address of P.O. Box 136 Barboursville, VA 22923. Barboursville Winery is a wholly owned subsidiary of Casa Vinicola Zonin S.p.A. (Zonin Group), an Italian wine group registered at Via Borgolecco 9, 36053 Gambellara (Vicenza), Italy.

**Background On Barboursville Winery And Its Affiliates**

9. Barboursville Winery, Inc., also known as Barboursville Vineyards, is a winery in Barboursville, Orange County, Virginia, within the federally recognized Monticello American Viticultural Area ("AVA"). It was founded in 1976 by Italian vintner Gianni Zonin.

10. Zonin Group's balance sheets from 2020 and 2021 show that Barboursville Vineyards was just one of ten subsidiaries wholly owned by Zonin in those years. In addition to its Barboursville and parent company operations, Zonin Group wholly owned international distribution affiliates—Zonin USA Inc. (Miami, Florida), Zonin UK Ltd. (United Kingdom), Zonin (Shanghai) Wine Trading Co., Ltd. (China), and 1821 Fine Wine & Spirits Nordics AB (Sweden)—and held several wine estates such as Dos Almas (Chile), Ca' Bolani (Italy), and Castello del Poggio (Italy).

11. During the year 2020, Zonin Group had an average of 509 employees worldwide. In 2021, it had an average of 526 employees worldwide.

## Legal Background

### A. The False Claims Act

12. The False Claims Act provides, in pertinent part, that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

13. For purposes of the False Claims Act, "the terms 'knowing' and 'knowingly' mean that a person, with respect to information[,] (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

### B. The Paycheck Protection Program

14. In March 2020, through the CARES Act, Pub. Law 116–136, Congress established the PPP to provide economic relief for small businesses during the coronavirus pandemic.

15. Under the first round of the PPP, an eligible business could apply for a loan of up to 2.5 times its average monthly payroll during 2019, subject to a maximum amount of $10 million. *See* 15 U.S.C. § 636(a)(36)(E); *see also* Small Business Administration ("SBA") Form 2483, Instructions.

16. An applicant for a first draw PPP loan could qualify as an eligible business under any of three standards:

> (1) having an average of no more than 500 employees during 2019 or during the 12 months prior to applying for a first draw PPP loan, *see* 15 U.S.C. § 636(a)(36)(D)(i)(I) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 14 (April 6, 2020);
>
> (2) the SBA employee-based or revenue-based size standard corresponding to the business's primary industry, *see* 15 U.S.C. § 636(a)(36)(D)(i)(II) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2; or
>
> (3) the SBA's alternative size standard, which provided that the business must have (a) a maximum tangible net worth of not more than $15 million, *and* (b) average net income after tax of not more than $5 million for the business's two full preceding fiscal years as of March 27, 2020, *see* 86 Fed. Reg. 15083, 15085 n.5 (Mar. 22, 2021) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2.

17. Under each of these eligibility standards, the law required the business to include its affiliates in assessing whether the business met the standard. *See* 15 U.S.C. § 636(a)(36)(D)(iv). The affiliation rule in effect at the time, 13 C.F.R. § 121.301(f) (2019) (*available at* 81 Fed. Reg. 41423, 41428 (June 27, 2016)), provided that "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both." The rule further elaborated that affiliation could arise under various circumstances, including:

> <u>Affiliation based on ownership</u>. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.

*Id.*; *see also* SBA, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (April 3, 2020).

18. Notably, when the PPP first came into effect, SBA issued guidance that "[y]ou are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is *in the United States*." 85 Fed. Reg. 20811, 20812 (April 15, 2020) (emphasis added). On May 5, 2020, however, SBA clarified that a PPP "applicant must count all of its employees and the employees of its U.S. *and foreign affiliates*." 85 Fed. Reg. 30835, 30836 (May 21, 2020).

19. In December 2020, Congress enacted the Economic Aid to Hard Hit Small Businesses, Nonprofits, and Venues Act, Pub. Law 116-260, Div. N, Tit. III, which, among other things, provided for eligible small businesses to obtain a second draw PPP loan. An eligible business could apply for a second draw PPP loan of up to 2.5 times its average monthly payroll during 2019 or 2020. 15 U.S.C. § 636(a)(37)(C); *see also* SBA Form 2483-SD, Instructions. An applicant for a second draw PPP loan could qualify as an eligible small business if (1) it had no more than 300 employees on average during the 12 months preceding its loan application or during the period it used to calculate average monthly payroll; and (2) and its revenue during any quarter of 2020 was at least 25 percent lower than in the corresponding quarter in 2019. 15 U.S.C. § 636(a)(37)(A)(iv); *see also* SBA Form 2483-SD, Instructions. For purposes of determining an applicant's number of employees, the original PPP affiliation rules applied. 15 U.S.C. § 636(a)(37)(E).

20. To apply for a second draw PPP loan, a business would submit SBA Form 2483-SD to an authorized lender. This form required a potential borrower to specify its North American Industry Classification System code, the number of employees, and whether "the Applicant or any owner of the Applicant [is] an owner of any other business, or have common management (including a management agreement) with any other business." On the second draw PPP loan application form, the box for "Number of Employees" specifically said "including

affiliates." The second draw application form also required the applicant to certify, among other things, that:

- "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted,"
- "[t]he Applicant, together with its affiliates . . . employs no more than 300 employees," and
- "[t]he Applicant is not engaged in any activity that is illegal under federal, state or local law."

21. The statutes creating the PPP program provided that SBA would reimburse PPP lenders for processing at specified rates. As relevant here, the rate for second draw loans of more than $350,000 was 3 percent. *See* 15 U.S.C. § 636(a)(37)(L)(ii)(II).

22. The PPP also provided for full forgiveness of a loan so long as the borrower used the loan proceeds in accordance with the PPP rules and did not reduce the number of its employees. *See* 15 U.S.C. § 636m; SBA, *Frequently Asked Questions (FAQs) on PPP Loan Forgiveness* (Oct. 13, 2020). To the extent a borrower reduced the average number of its employees in the months after receiving the loan, the PPP created a formula for reducing the loan forgiveness amount accordingly. *See* 15 U.S.C. § 636m(d)(2).

**Background On Barboursville Winery's Second Draw PPP Loan**

23. On February 20, 2021, Barboursville Winery, Inc., was approved for a second-draw PPP loan of $459,120.00 through Loan Source Incorporated (loan number 2329758509). On the application form for this loan, Barboursville Winery represented that it had just 35 employees and classified itself under NAICS code 312130 (Wineries).

24. On October 19, 2021, Barboursville Winery applied for loan forgiveness. The SBA granted forgiveness of $462,138.00— the full loan principal plus interest—on February 18,

2022. The SBA separately paid Loan Source Incorporated a three percent processing fee of $13,773.00 in connection with the loan.

25. Prior to these events, on April 28, 2020, Barboursville Winery received a first-draw PPP loan of $459,100 through Virginia National Bank (loan number 7624757203). Its affiliate, Zonin USA, also received a first-draw loan of $583,300 through this lender (loan number 7547227203).

## Fraud Allegations

26. When Barboursville Winery applied for its second draw PPP loan, Barboursville Winery, Zonin Group, and Zonin Group's other subsidiaries were affiliates because Barboursville Winery itself was a subsidiary of Zonin Group.

27. Barboursville Winery did not qualify for the second draw PPP loan it received, because it and its affiliates, including Zonin Group, employed more than 300 people. As noted above, Zonin Group reported that it had an average of 509 employees in 2020, and an average of 526 employees in 2021.

28. Barboursville Winery did not qualify for the second-draw PPP loan it received. As alleged above, Barboursville Winery and its affiliates, including Zonin Group, had at least 500 employees in 2021. Thus, on information and belief, Relator alleges that Barboursville Winery and its affiliates did not have an average of fewer than 300 employees at any time during the relevant time periods for purposes of determining the number of employees Barboursville Winery should have reported on its second-draw loan application in February 2021.

29. Barboursville Winery did not report the true number of employees of all its affiliates on its second-draw PPP loan application, even though the application and the governing rules clearly required second-draw PPP loan applicants to include the employees of all their affiliates, domestic and foreign, on second-draw PPP loan applications.

**COUNT I**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

30. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

31. Through the acts set forth above, Barboursville Winery knowingly presented, or caused to be presented, false or fraudulent claims for payment to SBA for its second draw PPP loan and loan forgiveness to which it was not entitled.

32. By virtue of the false or fraudulent claims that Barboursville Winery knowingly made or presented, or caused to be made or presented, Barboursville Winery violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**COUNT II**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**

33. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

34. Through the acts set forth above, Barboursville Winery knowingly made, used, or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by SBA for its second draw PPP loan and loan forgiveness to which it was not entitled.

35. By virtue of the false records and statements Barboursville Winery made, used, or caused to be made or used, Barboursville Winery violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## Prayer for Relief

a. A judgment against Defendant in an amount equal to all damages due to the Government, including treble damages, under the FCA;

b. A judgment against Defendant for all civil penalties due to the Government for Defendant's violations of the FCA;

c. That Relator recover from Defendant all costs of this action, with interest, including the cost to the Government for its expenses related to this action;

d. That Relator recover from Defendant all reasonable attorneys' fees in bringing this action;

e. That Relator be awarded the maximum amount of the proceeds of this action as allowed under 31 U.S.C. § 3730, and/or any other applicable provision of law;

f. That a trial by jury be held on all issues so triable;

g. An award of pre- and post-judgment interest; and

h. Such other and further relief to Relator and/or the United States of America as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

DATED this 16th day of October, 2025.

Respectfully Submitted through Counsel:

Zachary A. Kitts
Virginia Bar # 47052
Counsel for Relator Daniel Foster
K&G Law Group, PLLC
2740 Chain Bridge Road
Vienna, VA 22181
Phone: 703-649-5500
Fax: 703-649-6363
Email: zkitts@kglawpllc.com

Pro Hac Vice Pending

Stephen A. Teller, WSBA #23372
Teller Law
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969
steve@stellerlaw.com
*Attorney for Plaintiff/Relator*